# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

In re GEROVA FINANCIAL GROUP, LTD.
SECURITIES LITIGATION

No. 11 MD 2275-SAS

ECF CASE

------------------------------------x

RUTLAND BAKER, BRUCE HENRY,
ELANORE KRAM, ALI ARAR and XIANHUA
XU, Individually and on Behalf of All Others
Similarly Situated,

No. 11 Civ. 3081-SAS

ECF CASE

                  Plaintiffs,

              - against -

GEROVA FINANCIAL GROUP, LTD., GARY
HIRST, MICHAEL HLAVSA, JOSEPH
BIANCO, JACK DOUECK, ARIE VAN ROON,
KEITH LASLOP, RICHARD RUDY,
STILLWATER CAPITAL PARTNERS, INC., and
STILLWATER CAPITAL PARTNERS, LLC,

                  Defendants.

------------------------------------x

## DECLARATION OF ETHAN D. WOHL IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

I, Ethan D. Wohl, hereby declare as follows:

1. I am a partner in the law firm of Wohl & Fruchter LLP. I submit this Declaration in support of my firm's application for an award of attorneys' fees and reimbursement of expenses in connection with services rendered in the above-captioned class action litigation (the "Action").

2. My firm is Co-Lead Counsel for the Plaintiffs.

3. The total number of hours spent on this litigation by my firm is 806.8. The total lodestar amount for attorney time based on the firm's current rates is $458,412. A

breakdown of the time devoted is set forth in Exhibit 1 hereto. The hourly rates for the attorneys shown in Exhibit 1 reflect market rates and have been accepted by courts in other investor class action litigation. The chart set forth in Exhibit 1 was prepared from contemporaneous daily time records maintained by my firm. Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

4. My firm also incurred a total of $52,755 in expenses in connection with the prosecution of this Action, for which it seeks reimbursement, as detailed in Exhibit 2 hereto. These expense items are billed separately and such charges are not duplicated in my firm's billing rates or the lodestar calculation set forth above.

5. With respect to the standing of my firm, attached hereto as Exhibit 3 is a true and correct copy of a biography of my firm and the attorneys currently employed by the firm.

I declare under penalty of perjury that the foregoing facts are true and correct. Executed this 2nd day of May, 2014.

                                                                               ETHAN D. WOHL

**EXHIBIT 1**

# Wohl & Fruchter LLP
# Billing Report

Matter: In re Gerova Fin. Group, Ltd. Sec. Litig., No. 11-md-2275-SAS (S.D.N.Y.)
Period: Inception - April 25, 2014

| Timekeeper | Position | Rate | Time | Total Billed |
|---|---|---|---|---|
| Rosen, Krista | Associate | $425 | 289.6 | $123,080 |
| Wigmore, Sara | Associate | $385 | 3.2 | $1,232 |
| Wohl, Ethan | Partner | $650 | 514.0 | $334,100 |
| Totals | | | 806.8 | $458,412 |

Report Generated 4/28/14

# EXHIBIT 2

# Wohl & Fruchter LLP
# Expense Report

Matter: In re Gerova Fin. Group, Ltd. Sec. Litig., No. 11-md-2275-SAS (S.D.N.Y.)
Period: Inception - April 25, 2014

| Expense Category | Amount |
|---|---|
| Court Reporting Fees | $440 |
| Westlaw | 5,707 |
| Expert Fees (Forensic Economics-Market Efficiency and Damages) | 3,971 |
| Foreign Counsel Fees (MJM Ltd., Bermuda Counsel, Paid Hourly) | 2,436 |
| Mediator Fees (Michael Young, JAMS) | 40,201 |
| Total Expenses | $52,755 |

Report Generated 5/2/14

EXHIBIT 3

**WOHL & FRUCHTER** LLP

## OUR APPROACH

Our firm focuses on the representation of plaintiffs on a full- or partial-contingent-fee basis in litigation against public companies and other well-resourced defendants. We represent shareholders in merger and acquisition cases, securities fraud litigation, and shareholder derivative actions. We also litigate complex commercial disputes, including disputes arising from earn-out provisions, and represent classes of consumers in litigation based on fraud and other unfair practices.

As detailed below, our focus on the representation of plaintiffs and use of contingent fee arrangements prompts us to litigate differently from firms using the traditional hourly model.

**#1 DRIVE THE CASE**

Our guiding principle is to drive cases to resolution – through trial or otherwise – as rapidly as practicable. Real value in any litigation comes from the threat of an adverse decision, either at the preliminary injunction stage or after trial. Our job as plaintiff's counsel is to make that prospect real and present to the defense through the focused and sustained application of resources and effort.

In addition to accelerating resolution, intensive litigation improves outcomes. With time, documents go missing, the claim that "I don't recall" becomes more plausible, key witnesses disappear, defendants go bankrupt. None favors the party with the burden of proof and need to collect a judgment.

Maintaining a high litigation tempo also preserves the plaintiff's initiative and momentum – factors that are hard to quantify, but exert a strong influence on how both sides view the case and its value. The pace of litigation also affects the Court's perspective. Cases that are litigated with urgency are treated accordingly; cases that linger do not age well – think milk, not wine – and run afoul the judicial imperative to maintain a current docket.

In practical terms, a commitment to moving cases means that we accord case scheduling and management a high priority. It also means that we do not take on matters that we cannot intensively staff, and tolerate the higher risk that comes with concentrating our resources.

**#2 INVEST EARLY**

While we litigate with urgency, we do not rush to file. The initial complaint is a crucial document: it frames the case, communicates the commitment of effort and quality of counsel, and sets the tone for the litigation.

The quality of the complaint also strongly influences whether the case survives the first major hurdle in most litigation – the motion to dismiss. While court rules

permit multiple attempts to plead a claim, judges have grown increasingly reluctant to allow multiple bites at the apple, and are often overtly skeptical of follow-on complaints that add new allegations to fix earlier deficiencies. Even with a sympathetic judge, an initial complaint that fails to pass muster typically sets the litigation back by a year or more, a major blow to the case's momentum.

For a rushed complaint, the motion to dismiss is a bullet to be dodged. For a well-drafted complaint that tells an accurate story, the motion is an opportunity: it permits the plaintiff to introduce the case to the judge on the plaintiff's terms, and prevailing on the motion validates the plaintiff's claims, creates "law of the case," and establishes a roadmap for subsequent litigation.

Reflecting our commitment to early investment in cases, we establish a centralized web-based, searchable repository for each active matter at its inception. Litigation depends heavily on effective knowledge management, and the early creation of a central repository allows documents and analysis to be captured and shared, greatly improving the efficiency of the litigation team, facilitating ongoing engagement with our clients, and allowing close collaboration with co-counsel at other firms.

**#3 INVOLVE THE CLIENT**

We believe that cases ultimately rise or fall on the ability to tell a simple story about the wrong done to the plaintiff. Often, it is the client who is in the best position to tell that story, identify and address weaknesses in their own case, and react to the narratives developed by counsel. While initial client interviews are typical, we also actively solicit clients' involvement on an ongoing basis, consult on draft court submissions, and share information gathered through discovery. As discussed above, we utilize a web-based platform to facilitate collaboration and provide clients broad-based access to court documents and case discovery.

**#4 IN DISCOVERY, LESS IS MORE**

We do not ask our adversaries for all potentially-relevant documents, and resist their efforts to provide them. Even the most complex case ultimately boils down to limited number of documents, and in most litigation, the key documents have necessarily passed through the hands of a small number of central players. We have found that savvy defense counsel are often the most generous with documents, and for good reason: larger productions delay the litigation, require that more of the review effort be delegated to attorneys outside the core litigation team, and impede the ability of senior attorneys to mine the document set through text searches and other document analysis tools.

Likewise, we do not believe in conducting fishing expeditions when it comes to depositions. While depositions of people with relevant knowledge are an integral

part of discovery, duplicative depositions educate opposing counsel and generate increasingly unhelpful testimony, creating a stronger record for the defense at summary judgment and a deeper pool of potential witnesses at trial.

**#5 EXPECT A TRIAL**

We gear our litigation strategy for trial. This affects the conduct of the case in ways large and small, from carefully planning out the elements of the proof required at trial, to laying the foundation for non-party documents at deposition, to withholding some lines of questioning at deposition to maximize their impact at trial. We believe the most important benefit of anticipating a trial, however, is one of mindset: the expectation that work will eventually be reflected in a presentation to judge or jury alters the way we view the effort devoted to a case.

**#6 PICK OUR BATTLES**

While litigation is inherently adversarial, we work hard to avoid unnecessary disputes. As litigators, turning the other cheek and accepting the innocent explanation do not always come naturally, but we believe our clients' interests and the good of the case depend on staying focused on the merits and avoiding non-essential conflicts that delay resolution, divert resources and draw attention away from the wrongdoing by defendants at the heart of the case.

**#7 USE EXPERTS SELECTIVELY**

We approach the use of expert testimony with caution. While robust science can make for devastating proof, the expert testimony most common in corporate and commercial litigation – from economists and other social scientists – typically involves far less scientific consensus. By introducing expert testimony on an issue, the proponent accords it weight and creates the risk that the adversary will be able to call a competing expert with better credentials or a more convincing analysis. At best, testimony often devolves into an inconclusive "battle of the experts." At worst, the adverse testimony can undermine the case. Even a draw ordinarily favors the defense, and however resolved, the battle defeats the plaintiff's essential goal of telling a simple, compelling story. Judges' intense skepticism of paid expert testimony also creates the further risk that it will be excluded or narrowed, disrupting trial planning.

We do often retain consulting experts to develop our understanding of technical areas and formulate questions for discovery, and we look out for issues where robust scientific proof or a strong expert consensus can narrow the issues in controversy. When in doubt, however, we prefer to make our case through fact witnesses and let the judge or jury draw their own conclusions.

# WOHL & FRUCHTER LLP

## PRACTICE AREAS

**COMPLEX COMMERCIAL LITIGATION**

We actively prosecute complex multi-jurisdiction litigation involving many parties, large volumes documents and witnesses, extensive motion practice on dispositive issues, expedited proceedings for preliminary injunction or early trial, and outcome-determinative technical or scientific expert analysis.

Complex litigation presents special challenges for plaintiffs, who bear the risks associated with delay and case management problems. We emphasize early factual and legal analysis, including overall case strategy, choice of legal claims, selection of defendants, and choice of jurisdiction and venue. We also give priority to litigation management and the efficient collection, integration and presentation of facts and legal issues through effective project management and use of information and presentation technology.

**MERGER & ACQUISITION LITIGATION**

We litigate claims based on inadequate price, process defects, and other breaches of fiduciary duty arising from merger and acquisition transactions. We intensively prosecute preliminary injunction motions where fiduciary breaches cannot be adequately compensated by damages, and actively pursue post-closing damages claims, through trial where necessary.  We also litigate post-closing appraisal claims. In the past year, substantial class damages recoveries were achieved in two litigations led by one of our partners.

We concentrate our M&A practice on cases where members of management face conflicts of interest that prevent them from acting in best interests of shareholders. Conflicts of interest arise in a variety of circumstances, including the following:

**Minority Squeeze-Outs**. When a controlling shareholder seeks to acquire the shares held by the public, the controlling shareholder's broad control over the company and its board of directors is recognized to present the inherent risk that shareholders will accept inadequate terms, based on the fear that the controlling shareholder might force a sale on worse terms or chose to operate the company to serve its own interests. Similar issues are presented by transactions in which controlling shareholders structure sales to provide themselves with benefits different from those received by the minority.

**Management and Private Equity-Led Buy-Outs**. Management's interests often also conflict with public shareholders' interests when they or an affiliated private equity firm conduct a buy-out. In such circumstances, the financial benefits obtained through accelerated payment of equity grants, other change-in-control payments, and the prospect of continued employment by the acquirer on better terms all provide strong incentives to accept less than full price in sale negotiations.

# PRACTICE AREAS

**Management Entrenchment**. Corporate managers' interest in retaining their positions and status can also lead them to resist acquisition offers that would be in the best interests of public shareholders. In such situations, the board's use of antitakeover devices, such as a "poison pill," must be closely scrutinized.

## SHAREHOLDER DERIVATIVE ACTIONS

We represent shareholders in derivative actions that seek to hold corporate fiduciaries responsible for many kinds of misconduct, including excessive executive compensation, self-dealing transactions, and failures of oversight leading to major violations of environmental, health and safety, anti-bribery and securities laws.

Derivative actions are subject to a unique procedural hurdle, the "demand requirement," which obligates a plaintiff to show that corporate directors are incapable or unwilling to pursue the wrongdoing, and subjects the case to an unusually high level of scrutiny at its outset. Consistent with our commitment to early investment, we utilize "books and records" demands, consulting experts, and independent investigation to develop the strongest complaint possible prior to initial filing.

## SECURITIES FRAUD

We represent investors injured by securities frauds ranging from misrepresentations and omissions by corporate managers, to false descriptions of investment products by financial advisors and stock market manipulation. We litigate cases on both a class and individual basis.

The high hurdles for adequately pleading securities fraud make our emphasis on early investment and investigation crucial, and the scale of the litigation and number of parties in many cases also place a premium on efficient case management, a focus of our approach to litigation.

## EARN-OUT DISPUTES

We represent sellers in earn-out disputes arising from company sale transactions.

Purchase agreements often make payments contingent on post-closing performance, and these "earn-out" provisions serve a valuable purpose by allowing buyers and sellers to share in the risks and rewards of future performance, providing the buyer comfort regarding the accuracy of representations regarding the business, and keeping the seller committed to the success of the enterprise. The high stakes involved in many earn-outs, buyer disappointment where hoped-for performance does not materialize, and frequent use of ambiguous contractual language, however, make earn-out disputes a regular occurrence.

We use a collaborative approach that emphasizes close consultation with our clients and contingent payment arrangements to share risk. We believe our effectiveness is

WOHL & FRUCHTER LLP

PRACTICE AREAS

enhanced by our partners' transactional M&A experience and our focus on the representation of plaintiffs in complex commercial and shareholder litigation.

**BOOKS AND RECORDS LITIGATION**

We litigate demands to inspect internal corporate documents – one of the most powerful tools for enforcing corporate accountability and exposing misconduct by insiders. "Books and records" demands are an essential precursor to shareholder derivative actions, and can also play an important role in efforts to achieve governance reform outside of litigation by prompting voluntary remedial measures, deterring future misconduct, and galvanizing collective shareholder action.

The foundation of effective books and records litigation is a carefully drafted demand letter – a statutory prerequisite to litigation – that seeks a narrowly-drawn, targeted document set (in contrast to the typical expansive discovery requests used in general litigation). The demand letter must also articulate one or more "proper purposes" for the demand, and must ordinarily provide sufficient detail to support the finding of a credible basis for mismanagement, waste or wrongdoing. Our emphasis on pre-filing analysis is particularly important for books and records actions because there is ordinarily no ability to amend the grounds for demand after filing, and the delay associated with a new demand often limits the utility of any production ultimately ordered.

**CONSUMER CLASS ACTIONS**

We represent classes of consumers injured by deceptive or other wrongful corporate misconduct, including false advertising, imposition of undisclosed or unfair fees, violations of contract rights, the sale of unsafe or defective products, and infringement on consumers' right to privacy.

Successfully litigating consumer class claims depends on a clear understanding of how the policy or practice at issue affects consumers as a group; claims can be litigated on a class-wide basis only when the defendant's conduct has a similar impact on enough people to justify collective action, and when the representative plaintiff has claims typical of the other members of the class.

Consistent with our commitment to investing in cases early, we conduct thorough pre-filing investigations, engage experts to perform preliminary analysis, and work to locate and interview multiple class members to fully understand the relevant policy or practice.

WOHL & FRUCHTER LLP

**WOHL & FRUCHTER** LLP

PEOPLE

# ETHAN D. WOHL

direct 212 758 4097

fax 212 758 4004

ewohl@wohlfruchter.com

### EDUCATION

J.D., *magna cum laude*, New York University School of Law, 1993

B.A., with honors, University of Chicago, 1989

### ADMISSIONS

States of Florida, New Jersey and New York

U.S. Courts of Appeals, 2d Cir. And 4th Cir.

U.S. District Courts, D.N.J., E.D.N.Y., S.D. Fla. and S.D.N.Y.

Ethan leads the Firm's practice, and focuses on representing investors and consumers in cases involving securities fraud, other breaches of fiduciary duty, complex commercial disputes, and consumer class actions.

Ethan graduated *magna cum laude* from New York University School of Law, where he was a member of the Order of the Coif, and received his B.A. in political science, with honors, from the University of Chicago.

Ethan began his legal career as law clerk to the Honorable Denis R. Hurley, United States District Judge in the Eastern District of New York, and was then associated with Wachtell, Lipton, Rosen & Katz, where he handled both transactional and litigation matters. He later joined Labaton Sucharow LLP, where he focused on the representation of plaintiffs in shareholder litigation.

Ethan has concentrated his practice in the fields of investor and class action litigation, and has represented and advised institutional clients and individuals on claims involving a wide range of matters, including securities fraud, stock options backdating, market manipulation, mergers and acquisitions, and self-dealing transactions by corporate executives. He has also led trial teams in commercial and shareholder disputes in the courts of Delaware, New York and Michigan.

Ethan has authored articles on a range of topics relevant to investor and class action litigation. Recent publications include:

- *Court of Appeals Endorses Robust In Pari Delicto Defense*, in the New York Law Journal;
- *Death of the Worldwide Class?* in BNA's Securities Regulation & Law Report;
- *The Bulwark of Private Enforcement*, in Pensions Age magazine;
- *Executive Compensation – Despite Reforms, Pay Is Less Transparent and Shareholder-Friendly Than in the Past*, in the New York Law Journal; and
- *Confidential Informants in Private Litigation: Balancing Interests in Anonymity and Disclosure*, in the Fordham Journal of Corporate & Financial Law (12 FORDHAM J. CORP. & FIN. LAW 551 (2007)).

Earlier in his career, Ethan worked in the public and non-profit sectors, where he served as general counsel to the New York City Housing Partnership, held management positions at New York City's housing and welfare agencies, and later established a community-based job training program for ex-offenders and former welfare recipients in the Bushwick community of Brooklyn, New York.

# WOHL & FRUCHTER LLP

## PEOPLE

## J. ELAZAR FRUCHTER

direct 212 758 4098

fax 212 748 4004

jfruchter@wohlfruchter.com

### EDUCATION

J.D., *cum laude*, New York University School of Law, 1993

B.A., Yeshiva University, 1990

### ADMISSIONS

State of New York

U.S. District Courts, E.D.N.Y. and S.D.N.Y.

J. Elazar ("Josh") focuses his practice on representing investors and consumers in class action litigation, as well as representing plaintiffs in commercial litigation, with a concentration on matters involving bankruptcy and insolvency.

Josh graduated *cum laude* from New York University School of Law, and received his B.A. in English Literature from Yeshiva University.

Josh began his legal career with Kaye Scholer LLP in New York, where he was a member of the bankruptcy department and handled a broad array of matters in federal bankruptcy and New York state courts, including fraudulent transfer and preference actions, confirmation of Chapter 11 plans of reorganization, "clawback" litigation in connection with Ponzi schemes, administration of mass tort claims, and representation of indentured trustees in state court litigation alleging breach of fiduciary duties.

Josh has authored several articles analyzing sections of the Bankruptcy Code, as well as an article examining the interplay between American and Jewish law in the area of medical malpractice:

- *Bankruptcy Code Section 502(d): Back Door to Avoidance*, 28 UCC L.J. 73 (1995) (with Arthur Steinberg)

- *To Bind or Not to Bind – Bankruptcy Code § 365(d)(3): Statutory Minefield*, 68 AM. BANKR. L.J. 437 (1994) (cited in *In re Montgomery Ward Holding Corp.*, 268 F.3d 205 (3d Cir. 2001), and other cases)

- *Doctors on Trial: A Comparison of American and Jewish Legal Approaches to Medical Malpractice*, 19 AM. J.L. & MED. 453 (1993)

# WOHL & FRUCHTER LLP

## PEOPLE

## KRISTA ROSEN

direct 212 758 4099

fax 212 758 4004

krosen@wohlfruchter.com

### EDUCATION

J.D., Benjamin N. Cardozo School of Law, 2006

B.A., Bowdoin College, 2002

### ADMISSIONS

States of Massachusetts and New York

U.S. District Courts, S.D.N.Y.

Krista graduated from Benjamin N. Cardozo School of Law, where she served as the Articles Editor of the *Cardozo Law Review*. She received her B.A. from Bowdoin College with concentrations in government & legal studies, and economics.

Before joining Wohl & Fruchter, Krista was an associate at Labaton Sucharow LLP, where she focused on the representation of institutional investors in securities fraud class action litigation.

Krista has also represented shareholders and investors in cases involving market manipulation, mergers and acquisitions, and breaches of fiduciary duties by corporate directors and officers in other contexts. She has also represented investors in arbitration proceedings against securities brokers.

Krista has authored articles in various publications on issues involving director liability and the role of foreign institutional investors in U.S. securities litigation, and she received an award from the Association of Securities and Exchange Commission Alumni for her article, *Staying in Court While Staying Discovery: Finding Exceptions for Government-Produced Documents Under the PSLRA*.

# WOHL & FRUCHTER LLP

## PEOPLE

## SARA WIGMORE

tel 212 758 4000

fax 212 758 4004

swigmore@wohlfruchter.com

### EDUCATION

J.D., Chicago-Kent College of Law, 2006

B.A., Loyola University, 2002

### ADMISSIONS

State of New York

Sara focuses her practice on the representation of shareholders and investors in transactional class action litigation involving mergers and acquisitions, breaches of fiduciary duty, and other self-dealing transactions by corporate executives.

Sara graduated from Chicago-Kent College of Law, with honors, where she received CALI Awards in Legal Writing 4 and Illinois Civil Procedure. She received her B.A. in history and theatre, magna cum laude, from Loyola University Chicago.

Sara began her legal career as an associate at Jump & Associates, an insurance defense firm in Chicago, where she wrote numerous motions and pleadings and participated in motion hearings and depositions.

Sara later joined Labaton Sucharow LLP, where her practice focused on the representation of shareholders and investors in transactional class action litigation. Sara's practice at Wohl & Fruchter LLP continues to focus on these matters.

570 LEXINGTON AVENUE | 16TH FLOOR | NEW YORK, NY 10022 | T 212 758 4000 | F 212 758 4004 | www.wohlfruchter.com

v.2